## BENSON *v.* ANDREWS *et al.*

1. The judgment overruling the general demurrer to the petition, not having been excepted to or set aside, was conclusive against the demurrant, and as to her it settled the law of the case, involving a construction of the will in question.

2. That judgment concluded also the executor of the will.
3. Evidence sufficient to support the allegations of the petition authorized a verdict for the plaintiff; and the direction of a verdict for the defendants was erroneous.

No. 1450.   February 11, 1920.

Equitable petition. Before Judge Pendleton. Fulton superior court. March 19, 1919.

*E. M. & G. F. Mitchell* and *Bell & Ellis,* for plaintiff.

*Mayson & Johnson, Hewlett & Dennis,* and *Candler, Thomson & Hirsch,* for defendants.

ATKINSON, J. Perry Andrews died testate, leaving a widow, Frankie Andrews, and her daughter, Idelia, by a former marriage, whom he had formally adopted and given his name. The will provided, among other things:

"Item 2. To my wife, Frankie Andrews, I will and bequeath my place of residence located at number 397 North Jackson Street, City of Atlanta, Ga., together with all household and kitchen furniture and other personal property belonging to and necessary to said home. In the event of my disposing of such property prior to my death, then it is my will that my said wife should own and possess any other home or place of residence, with the personalty therein contained, of which I may die possessed. This property is willed to my wife for and during her life or widowhood. In the event of her death or marriage during the life of my adopted daughter, Idelia Andrews, then it is my wish that said dwelling-house, with the furniture and personal property connected with the same, shall become the property of my adopted daughter, Idelia Andrews. If my daughter, Idelia Andrews, should marry and become the mother of a child or children, and should die previous to the death or marriage of my said wife, then it is my desire that the property described and mentioned in this item should descend to the child or children of my said daughter, if any. Should my said wife, Frankie Andrews, die previous to the death of my daughter, it is my will that the property described and mentioned in this item should descend directly to the daughter for life, with fee to her children; the purpose and intent of this will being that this home property should be a home for my wife so long as she shall live or remain unmarried, and, at her death or marriage, that it shall become the home of my adopted daughter if in life, or the property of the children of said adopted daughter,

if any. At the death or marriage of my said wife, and upon the death of my said adopted daughter without leaving children, then I direct that this property shall revert to my estate and be disposed of as hereinafter provided. I want it distinctly understood that it is my purpose to give this property, first, to my wife as a home under the cconditions named; next, to my daughter; and upon the death of both, that no husband of either should control any part of it, but, in the absence of children of the daughter, that the property shall revert to my estate.

"Item 3. I direct that after my debts are paid, and in so far as may be practicable or expedient, that all of my estate remaining after my debts are paid, other than is covered by Item 2 of this will, shall be kept intact, invested in the discretion of my executor, and that all income or revenue arising therefrom is bequeathed unto my said wife, Frankie Andrews, and my adopted daughter, Idelia Andrews, under the same terms and conditions and with the same limitations upon the same as provided in Item 2 of this will, the final disposition of said property to be determined in accordance with the same directions as given in Item 2 of this will. I direct that any and all interests passing unto my said daughter or to her issue, if any, are to be and remain their separate and sole estate free from the control, management, or uses of any husband my said daughter may take.

"Item 4. In the event of the death of my said daughter without issue, and likewise the death or marriage of my wife, Frankie Andrews, I desire and direct as follows: My executor shall sell all of my property both real and personal, and that the proceeds of such sale shall be divided into six shares and the same to be paid as follows [then follow the names of others not necessary to be mentioned]. The distinct purpose and intent of this will is to promote [provide?], first, for my wife and daughter, in the manner and under the conditions set forth in the second and third items of this will, and in the event of the death or marriage of my said wife, thus fulfilling my obligations to her, and in the event of the death of my adopted daughter without children, then to provide for a disposition of my property after paying expenses of administration. Should my daughter, Idelia Andrews, marry and leave children, the disposition of the property set forth in this item of the will not to be of any effect; but should my said daughter

die without children, and upon the death or marriage of my wife, the disposition of the estate provided in this item is to take effect. . "Item 5. I hereby nominate and appoint the Central Bank and Trust Corporation of Atlanta, Georgia, as executor of this my will."

Subsequently a codicil to the will was executed, which, so far as material, was as follows: "In order to insure my wife and daughter named in said will against any possibility of want for the necessities and comforts of life, I hereby authorize and empower them, or the survivor if either of them should die, to sell and convey at public or private sale the fee-simple estate in any of the property owned by my estate at the time of such sale, and to receive and use the proceeds thereof for their or her support and maintenance; provided however that before exercising such power of sale they or she shall first notify the executor of this will in writing that in their or her opinion such sale is necessary in order to raise funds for their or her comfortable support or maintenance, which said notice shall describe the property which it is proposed to sell and shall be filed by the executor with the ordinary as a part of his report."

The will was executed in August 1914; the codicil in November of the same year, and the testator died shortly thereafter. The will was probated in solemn form in June, 1915. In February, 1918, Idelia, having married and being a minor, instituted an equitable action by her guardian against her mother (the widow of the testator) and the executor. The petition alleged all that is stated above, and, among other things, the following: There came into the hands of the executor the residuum of the estate exclusive of the home place and household furniture, which, after the payment of all debts of the testator, amounted to $30,000, and was invested by the executor as directed by item 3 of the will. The executor recognized the widow as sole beneficiary of the trust estate created by item 3 of the will, and was continuing to pay to her the entire income of the residuum of the estate to the exclusion of the plaintiff. Petitioner's guardian has demanded from the executor one half of the net income from such residuum, which demand was refused. The demand was based on a construction of the will whereby it was contended that all of the income from the residuum held in trust by the executor was bequeathed to the widow while

she lived and petitioner jointly, and both should participate equally in such income so long as the widow should live. Such construction had reference to the will in its entirety, and the codicil, considered in the light of certain allegations as to the circumstances confronting the testator at the time the will was executed. Among the prayers of the petition were: (*a*) that the will be construed by the court as indicated above; (*b*) that the executor be directed to pay petitioner one half of the income now on hand, or that may hereafter be received, and that the executor be enjoined from paying to the widow more than one half thereof; (*c*) that judgment be rendered against the executor for one half of the amount of the income already received by him; (*d*) that the executor make discovery as to the assets of the estate, etc. A general demurrer to the petition was filed by the widow, on the ground that the allegations did not set up a cause of action or any basis of relief; more especially because, there being no ground of equitable relief, the court was without jurisdiction to construe the will, and upon a proper construction of the plain language of the will it should not be construed as contended for by the plaintiff. The demurrer was formally overruled, and no exception was taken to this judgment. The widow also filed an answer. The executor did not file any demurrer to the petition, but filed an answer. At a subsequent term the case came on for trial on its merits, and the plaintiff amended the petition by striking therefrom the allegations as to liability of the executor for one half of the income already collected by the executor, and the prayer for judgment against the executor for such portion of the income. Upon the conclusion of the plaintiff's evidence the trial judge directed a verdict for the defendants, and entered judgment accordingly. The plaintiff excepted.

1. The judgment overruling the demurrer to the petition included, among other things, construction of the will; and there being no exception thereto, under former rulings of this court the judgment was conclusive against the demurrant, and as to her became the law of the case. *Brooks* v. *Rawlings,* 138 *Ga.* 310 (75 S. E. 157); *Bailey* v. *Georgia & Florida Ry.,* 144 *Ga.* 139 (86 S. E. 326).

2. The judgment on the demurrer, unexcepted to and unreversed, was also conclusive upon the executor. *McKinney* v. *Powell,* 149 *Ga.* 422 (100 S. E. 375); *Tillman* v. *Davis,* 147 *Ga.* 206

(93 S. E. 201); *Tate* v. *Goode*, 135 *Ga.* 738 (70 S. E. 571, 33 L. R. A. (N. S.) 310; 6 Enc. Proc. 939.

3. Under application of the foregoing rulings, evidence submitted at the trial, sufficient to support the allegations of the petition, authorized a verdict for the plaintiff; and without regard to the impropriety of directing a verdict for a defendant upon the conclusion of the plaintiff's evidence where he fails to prove his case as laid (*Copeland* v. *Jordan*, 147 *Ga.* 601, 95 S. E. 13), it was erroneous in this case to direct a verdict for the defendants.

*Judgment reversed. All the Justices concur, except George, J., dissenting.*